UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WEARFORCE PTY LTD, | Case No. 3:21-cv-00284-MMD-CSD |
|     Plaintiff and Counter Defendant,<br>v.<br>TALON ENGINEERING, SDN BHD,<br>    Defendant and Counter Claimant. | CLAIM CONSTRUCTION ORDER |

## I. SUMMARY

Plaintiff and Counter Defendant WearForce Pty Ltd alleges that Defendant and Counter Claimant Talon Engineering, SDN BHD infringes U.S. Reissued Patent No. RE47,477 (the "'477 Patent") (ECF No. 1-1)[1] in this patent case because Talon imports and sells allegedly infringing LOCKJAW shroud assemblies for the buckets of loaders and other earthmoving machinery. (ECF No. 1.) This Order addresses the disputed claim terms the parties presented for the Court to construe.

## II. BACKGROUND

As noted, WearForce accuses Talon's LOCKJAW G.E.T. product of infringing Claims 25-29, 32, and 35-43 of the '477 Patent. (ECF No. 45 at 8.) The Court incorporates by reference the photographs that WearForce included in its opening brief as helpful to the extent they illustrate the technology at issue and provide some background regarding the art pertinent to the '477 Patent. (*Id.* at 6-8.)

The Court held a claim construction hearing on June 8, 2022. (ECF No. 50 ("Hearing"); *see also* ECF No. 51 (Hearing transcript).) At the Hearing, the parties' counsel

---

[1]The '477 Patent reissued from U.S. Patent No. 8,776,408. (ECF No. 1 at 4.)

presented technical tutorials and argument on the four disputed claim terms also discussed below. (*Id.*)

## III. LEGAL STANDARD

Patent claim construction is a question of law for the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When interpreting claims, a court's primary focus should be on the intrinsic evidence of record, which consists of the claims, the specification, and the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc). The Court should begin by examining the claim language. *See id.* at 1312. Claim language should be viewed through the lens of a person of "ordinary skill in the relevant art at the time of the invention." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005) (citations omitted). If the claim language is clear on its face, then consideration of the other intrinsic evidence is limited "to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

A court should give the claim's words their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312-13 (quotation omitted). In construing a claim term's ordinary meaning, the context in which a term is used must be considered. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). Both asserted and unasserted claims of the patent also can add meaning to a disputed claim term as claim terms normally are used consistently throughout the patent. *See Phillips*, 415 F.3d at 1314.

"[C]laims must be read in view of the specification, of which they are a part." *Id.* at 1315 (quotation omitted). The specification can offer "practically incontrovertible directions about a claim meaning." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Id.* "[A]lthough the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into claims when the claim language is broader than such embodiments." *Tate Access Floors, Inc. v.*

*Maxcess Techns., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000) (quotation omitted). "By the same token, the claims cannot enlarge what is patented beyond what the inventor has described in the invention." *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted). "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." *Id.*

In addition to the specification, a court should consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. However, because the prosecution represents an "ongoing negotiation" rather than the "final product" of the negotiation, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Consulting the prosecution history can, however, be helpful in determining whether the patentee disclaimed an interpretation during prosecution. *See Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1296 (Fed. Cir. 2005). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

If the claim language is not clear after reviewing all intrinsic evidence, then the Court may refer to extrinsic evidence such as expert testimony, inventor testimony, dictionaries, and learned treatises. *See Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,* 206 F.3d 1408, 1414 (Fed. Cir. 2000).

**IV.   DISCUSSION**

The parties have narrowed[2] the contested claim terms to four terms in the claims of the '477 Patent. (ECF Nos. 44-1 at 3-11, 45 at 16-31, 46 at 12-35.) Summaries of their proposed constructions of each disputed term as stated in the Joint Claim Construction and Prehearing Statement (ECF No. 44-1 at 3-11) are presented in comparison charts

---

[2]The parties agree on the construction of six claim terms. (ECF Nos. 44-1 at 2, 45 at 15-16, 46 at 10.)

3

below. The Court will address each of the disputed terms below after each of the comparison charts.

A. "locking means" (claim 25)

| WearForce's Proposed Construction | Talon's Proposed Construction |
|---|---|
| 35 U.S.C. § 112(f) applies | 35 U.S.C. § 112(f) applies |
| Function: "engage the boss to releasably secure the shroud with respect to the wear edge when the locking means is in a locked position" | Function: "engage the boss to releasably secure the shroud with respect to the wear edge when the locking means is in a locked position" |
| Structure: "a locking device and a compressible member, wherein the locking device is rotatably supported in the shroud, the locking device being in the form of a cylinder, the cylinder having a sidewall which incorporates at least one helix, the at least one helix projecting from at least a portion of the sidewall, wherein the compressible member has each of a first face and a second face, and wherein a portion of an external surface of the helix has at least one engaging section adapted to directly engage the second face of the compressible member and equivalents thereof" | Structure: "locking device 51, helix 61, flat section 67, and compressible member 53" |

The parties agree about much of the construction of this term. As WearForce phrases it, the parties' primary dispute as to this term is whether "'flat section 67' shown in the specification on helix 61 is a required element of the claim construction for 'locking means.'" (ECF No. 45 at 17.) WearForce argues it is not. (*Id.*) However, WearForce also argues in reply (ECF No. 47 at 4-6) that Talon tried to change its proposed construction in its responsive claim construction brief, characterizing "the key dispute" as "whether 'flat section 67 or recess 179' should be included in the structure of 'locking means[.]'" (ECF No. 46 at 12-13.) Said otherwise, Talon changed its proposed construction from arguing that the locking means must have a 'flat section 67' as part of its structure in the Joint

4

1  Claim Construction and Prehearing Statement to arguing that the locking means must
2  have either 'flat section 67 or recess 179' in its responsive claim construction brief.[3] (*Id.*)

3  WearForce accordingly argues that Talon's attempt to change its proposed
4  construction violates LPR 1-16. (ECF No. 47 at 4-6.) LPR 1-16 requires a showing of good
5  cause to change claim construction positions submitted in the Joint Claim Construction
6  and Prehearing Statement. (*Id.*) WearForce also argues Talon cannot show good cause
7  under LPR 1-16 as further defined in LPR 1-12 because allowing Talon to change its
8  position in response to WearForce's opening brief prejudices WearForce, as it would
9  essentially force WearForce to start the claim construction process over again. (*Id.*)

10  The Court asked the parties to address this argument at the Hearing. Talon argued
11  that it did not change its position from the Joint Claim Construction and Prehearing
12  Statement to its responsive claim construction brief because 35 U.S.C. § 112 ¶ 6 provides
13  that a means plus function claim must "be construed to cover the corresponding structure,
14  material, or acts described in the specification and equivalents thereof." *Id.* Because 'flat
15  section 67' and 'recess 179' are equivalent, Talon argues that it impliedly included 'recess
16  179' when it included 'flat section 67' in its proposed construction of 'locking means' and
17  'locking mechanism.' Moreover, Talon's counsel referred to a declaration he filed with
18  Talon's responsive claim construction brief describing how Talon has consistently taken
19  this position throughout the case, and particularly pointing out how he called WearForce's
20  counsel on April 14, 2022 to explain that Talon's position included both 'flat section 67'
21  and 'recess 179.' (ECF No. 46-1 at 2.) Thus, Talon's counsel argued at the Hearing that
22  Talon did not change its position and WearForce was not prejudiced in any event.

23  WearForce's counsel maintained the argument raised in its reply brief at the
24  Hearing that the Court should adopt its proposed claim constructions because the fact that
25  Talon changed its proposed constructions means Talon conceded they were wrong; and

---

[3] Talon attempts to make the same change as to 'locking mechanism.' (ECF No. 46 at 18.) This discussion as to 'locking means' accordingly applies to 'locking mechanism' as well.

the Court should not consider Talon's expert's declaration at all because it advances the claim construction positions Talon has since rejected—meaning it is unreliable—on top of the law providing that the Court should not consider expert delcarations at claim construction unless the intrinsic evidence is unclear. (ECF No. 47 at 4-6.) While the Court agrees with WearForce that Talon violated LPR 1-16, the Court is ultimately persuaded by Talon's argument on this issue.

And as further explained below, Talon is right on the statute, but wrong on LPR 1-16. The District's Local Patent Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1162 (D. Nev. 2014) (citation omitted). This need for certainty suggests that the Court should read the rules literally, as not allowing for implicit equivalents. Moreover, LPR 1-16 is clear: "Deviations from the claim construction positions submitted in the Joint Claim Construction and Prehearing Statement will be permitted only upon a showing of good cause." *Id.* This too, suggests that Talon should have written the proposed construction it insists it meant to all along in the Joint Claim Construction and Prehearing Statement. The best reading of 'deviation' in this context is any change in the words on the page—the rule does not appear to have an implicit exception for equivalents. The Court accordingly finds that Talon violated LPR 1-16.

However, the Court will waive LPR 1-16 in this instance and thus excuse Talon's violation of it. *See* LR IA 1-4 ("The court may sua sponte or on motion change, dispense with, or waive any of these rules if the interests of justice so require."). The interests of justice support this waiver here because there is no real dispute that WearForce was aware Talon meant its proposed constructions of this term and 'locking mechanism' to include 'recess 179' as of April 14, 2022. (ECF No. 46-1.) Moreover, Talon is correct on the law—the corresponding structure of a means plus function claim implicitly includes equivalents. *See* 35 U.S.C. § 112 ¶ 6. Thus, WearForce both was aware—and should have been aware—that Talon's proposed construction for this term and 'locking

6

mechanism' included 'recess 179.' WearForce accordingly was not prejudiced by Talon's arguable change in position.

That brings the Court to the substance of the parties' dispute: must the corresponding structure of 'locking means' include either 'flat section 67' or 'recess 179?' And the Court agrees with Talon that it must.

To further elaborate on the substance of the parties' arguments, WearForce argues its claim construction position is supported by the prosecution history (ECF No. 45 at 17-19), that Talon's proposed construction excludes disclosed embodiments (*id.* at 19-20),[4] and Talon's proposed construction is wrong because the flat section is described as an optional feature in the specification (*id.* at 20-21). WearForce concludes its argument by requesting the Court adopts its construction including "and equivalents thereof." (*Id.* at 21.)

Talon counters, supported by the testimony of its expert Roelof H. deVries, that its proposed construction is correct because the invention embodied in the '477 Patent would not function properly if there is not a flat surface or recess on the helix within the locking means. (ECF No. 46 at 13-17.) Talon further argues that WearForce's argument based on the '477 Patent's prosecution history is both incorrect and irrelevant. (*Id.* at 17-18.) Talon finally requests that the Court's construction of this term not conclude with "and equivalents thereof" because it is superfluous and may confuse the jury. (*Id.* at 18.) Overall, the Court agrees with Talon as to this disputed term.

The first problem with WearForce's argument is that it starts with the prosecution history instead of the claim language. (ECF No. 45 at 17-19.) *See Phillips*, 415 F.3d at 1312 (explaining that the claims themselves are of primary importance in claim construction). And when it comes to the actual claim language, the parties agree that part of the function performed by 'locking means' is releasably securing the shroud. This

---

[4]This argument is rendered moot by the Court's decision to waive Talon's LPR 1-16 violation because WearForce's argument is that one preferred embodiment described in the patent includes 'recess 179.' (ECF No. 45 at 19-20.) And the Court treats Talon's proposed construction as including either 'flat section 67' or 'recess 179.' For this reason, the Court does not further address this argument.

7

1  'releasably' concept is a key concept in claim 25. (ECF No. 1-1 at 17.) But WearForce's
2  proposed construction does not capture it in the way 'releasably' is used in the context of
3  the '477 Patent. Indeed, at the Hearing, Wearforce's counsel essentially argued that the
4  shroud could releasably lock to the wear edge by virtue of being fully cranked down until
5  the locking device could not rotate any more. While that may well be the case, that is not
6  how the invention described in the '477 Patent works.

7  To the contrary, and as Talon argues (ECF No. 46 at 13-17), claim 25 contemplates
8  a locked position that can only be achieved when either 'flat section 67' or 'recess 179'
9  engage the compressible member. (ECF No. 1-1 at 17.) And as there are two
10 embodiments described in the specification, this releasable engagement can happen—
11 depending on the embodiment—using either 'flat section 67' or 'recess 179.' As to the first
12 embodiment, "the flat section 67 on the external face 73 of the helix 61 aligns with and
13 engages the second face 71 of the compressible member 53." (*Id.* at 15.) As to the second
14 embodiment, "a second face 171 is shaped to complement the shape of the recess 179
15 such that when the recess 179 aligns with the second face 171 the locking device 51 is
16 releasably locked with respect to the compressible member 53." (*Id.*) But without either
17 'flat section 67' or 'recess 179,' the locking means could not releasably secure the shroud
18 to the wear edge. WearForce's argument as to this disputed term is accordingly
19 unpersuasive because it finds support in neither claim 25 nor the specification.

20 The Court similarly rejects WearForce's argument that Talon's proposed
21 construction is wrong because the flat section is described as an optional feature in the
22 specification because the Court reads that portion of the specification as simply making
23 room for the second embodiment described in the specification. (ECF No. 45 at 20-21.)
24 Indeed, even the same portion of the specification that WearForce excerpts in support of
25 this argument supports this view. (*Id.* at 20.) Generally the cam like surface has a portion
26 that engages the compressible member: it can either be complimentary in shape with the
27 surface of the compressible member or flat. (*See id.*; *see also* ECF No. 1-1 at 14 (the
28 same text in the patent).) That aligns with Talon's view that the locking means depends

8

on either 'flat section 67' or 'recess 179,' not with WearForce's view that somehow either of those components are optional.

Finally, the Court agrees with Talon that it is unnecessary to include the phrase 'and equivalents thereof' at the end of the construction of 'locking means.' (ECF No. 46 at 18.) As a means plus function term, 'locking means' already covers equivalents of its corresponding structure. The Court accordingly does not need to say so twice by adopting WearForce's proposed addition to its construction of 'locking means.' *See, e.g., Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999) (explaining that a means plus function claim limitation is subject to the requirements of 35 U.S.C. § 112, ¶ 6 and, "[a]s such, the limitation must be construed 'to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'").

In sum, the Court rejects WearForce's proposed construction for this term and instead adopts Talon's as clarified in its responsive brief. 'Locking means' is a means plus function claim subject to 35 U.S.C. § 112(f). Its function is to "engage the boss to releasably secure the shroud with respect to the wear edge when the locking means is in a locked position[.]" Its corresponding structure is locking device 51, helix 61, flat section 67 or recess 179, and compressible member 53. Said otherwise, the locking means has a four-part structure, as Talon argues, and not a three-part structure, as WearForce argues.

B.  "locking mechanism" (claims 35, 37, 38)

| WearForce's Proposed Construction | Talon's Proposed Construction |
|---|---|
| 35 U.S.C. § 112(f) does not apply | 35 U.S.C. § 112(f) applies |
| "the locking device" | <u>Function</u>: "locking the shroud relative to the attachment mechanism" |
| | <u>Structure</u>: "locking device 51, helix 61, flat section 67, and compressible member 53" |

1    As noted, WearForce argues that Talon changed its proposed construction in its
2 responsive brief as to this term as well. (ECF No. 47 at 4-6.) To describe the change as
3 WearForce does, while Talon initially argued the structure of 'locking mechanism' must
4 include "flat section 67[,]" (ECF No. 44-1 at 7), Talon now argues it must include "either
5 flat section 67 or recess 179" (ECF No. 46 at 18). But as also noted above, the Court's
6 discussion regarding LPR 1-16 as to 'locking means' also applies to 'locking mechanism.'
7 Talon's proposed construction as to 'locking mechanism' accordingly includes "locking
8 device 51, helix 61, flat section 67 or recess 179, and compressible member 53[.]" (*Id.*)

9    On the substance of the parties' arguments as to this term, while WearForce argues
10 this is not a means plus function term because it does not include the phrase means and
11 other terms within the patent do (ECF No. 45 at 21), Talon counters that its unrebutted
12 expert testimony establishes that this is a means plus function term. (ECF No. 46 at 18-
13 19.) WearForce replies that Talon does not contend "locking device" is a means plus
14 function term because it has a defined structure, so the key question before the Court is
15 whether "locking mechanism" means the same thing as "locking device," as WearForce
16 contends it does. (ECF No. 47 at 6-10.)

17    On that point, Talon argues that the two terms cannot mean the same thing
18 because they both appear in the same claim. (ECF No. 46 at 29.) WearForce effectively
19 counters that they can because, in the context of the intrinsic evidence, 'locking
20 mechanism' means only the rotating device 51 and not the whole locking assembly 19.
21 (ECF No. 47 at 7-8.) WearForce further argues that the prosecution history compels the
22 same result. (*Id.* at 8-9.) WearForce then argues that the caselaw Talon relies on is
23 distinguishable and that Talon advances an inconsistent claim construction by arguing this
24 is a means plus function term because Talon does not argue many other, similar terms
25 that appear in the '477 Patent are means plus function terms. (*Id.* at 8-10.) But the Court
26 agrees with Talon.

27    'Locking mechanism' cannot mean the same thing as 'locking device.' There are
28 three primary reasons for this. First, the presumption is to the contrary. *See Helmsderfer*

*v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("Our precedent instructs that different claim terms are presumed to have different meanings."). Second, the patent in suit uses both 'locking mechanism' and 'locking device' in the same claim. (ECF No. 1-1 at 18.) Third, 'locking mechanism' and 'locking device' in claim 35 refer to different things. (*Id.*) The 'locking mechanism' is written in claim 35 to include the 'locking device' and the 'attachment mechanism.' (*Id.*) Said otherwise, the 'locking device' is a component of the 'locking mechanism.' (*Id.*) Thus, the two terms cannot mean the same thing. The Court accordingly rejects WearForce's primary argument that they are.

The Court also agrees with Talon that 'locking mechanism' is a mean plus function claim even though it does not use the term 'means.' *See, e.g.*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) ("failure to use the word 'means' also creates a rebuttable presumption—this time that § 112, para. 6 does not apply.") (citation omitted). The Court again focuses on the intrinsic evidence, especially the language within the claims. What is the locking mechanism in claim 35? It is, as Talon argues, a 'mechanism for locking the shroud relative to the attachment mechanism.' (ECF No. 46 at 18.) That function is right in the claim. (ECF No. 1-1 at 18.) And as written, that function means something very close to a 'means for locking' because of the use of the word 'for.' Said otherwise, what is the 'locking mechanism?' A mechanism for locking. It is defined in claim 35 as a function of what it does, suggesting it is indeed a means plus function claim. What's more—and as Talon also argues—the United States Court of Appeals for the Federal Circuit has recognized that 'mechanism' is a 'nonce' word that may substitute for 'means' in a means plus function claim term. *See MTD Prod. Inc. v. Iancu*, 933 F.3d 1336, 1341 (Fed. Cir. 2019). Indeed, it serves that function in claim 35. In sum, the Court agrees with Talon that 'locking mechanism' is a means plus function claim.

And as to the structure corresponding to the function, Talon proffers the same corresponding structure that it does for 'locking means'—a four part system consisting of "locking device 51, helix 61, compressible member 53, and either flat section 67 or recess 179[.]" (ECF No. 46 at 18.) The Court agrees that this is the corresponding structure for

11

locking mechanism. (ECF No. 1-1 at 15 (consistently describing this four part system as to both preferred embodiments in the patent in suit).)

Moreover, it follows that both 'locking means' and 'locking mechanism' are means plus function claims with the same structure because the two terms play equivalent roles in claims 25 and 35—the independent claims in which they feature. To start, both terms are situated at the beginning of a claim limitation, denoting that they are the overall system described in that limitation. (*Id.* at 17-18 ("a locking means including…" (claim 25) and ("a locking mechanism for locking…") (claim 35)).) And in the case of both claim 25 and claim 35, they appear to mean something similar—a system consisting of a locking device and either a compressible member (in claim 25) or an attachment mechanism (in claim 35) that attaches a shroud assembly to a wear edge.

Relatedly, and as Talon also points out (ECF No. 46 at 21-22), 'locking mechanism' does not appear in the specification of the patent in suit—only the claims. And indeed, the closest thing to 'locking mechanism' described in the specification is 'locking means,' further supporting the Court's view that the two means plus function claims have the same corresponding structure.

In sum, the Court need not—and does not—go beyond the inner layers of the intrinsic evidence (the claims and the specification) to conclude that Talon's proposed construction for 'locking mechanism' is the correct one. The Court finds that 'locking mechanism' is a means plus function claim whose function is "locking the shroud relative to the attachment mechanism[,]" and whose corresponding structure is 'locking device 51, helix 61, either flat section 67 or recess 179, and compressible member 53.'

### C. "locking device" (claims 25, 29, 32, 35, 40)

| WearForce's Proposed Construction | Talon's Proposed Construction |
|---|---|
| "a lock including a locking member, rotatably supported in the shroud, that co-operates with the boss to lock the shroud relative to the wear edge" | "a device that rotationally advances into a shroud" |

1  WearForce's proposed construction of this term is narrower, and, indeed, much of
2  WearForce's argument is that Talon's proposed construction is too broad because it would
3  encompass any ordinary bolt or screw. (ECF No. 45 at 28-29.) WearForce argues such a
4  broad construction is not supported by the prosecution history, which distinguishes the
5  invention embodied in the '477 Patent over prior devices that used a mere bolt or screw.
6  (*Id.* at 28-30.) Talon counters that its proposed construction is correct because the sole
7  purpose of the locking device as described in the patent is to be rotationally advanced into
8  the shroud. (ECF No. 46 at 29-30.) WearForce replies that the specification also explains
9  that the locking device "works with the boss to lock the shroud relative to the wear edge"—
10 so Talon's proposed construction is incorrect. (ECF No. 47 at 15.) WearForce otherwise
11 reitereates that the prosecution history supports its proposed construction. (*Id.* at 15-16.)
12 The Court agrees with WearForce.

13  Talon's proposed construction is too broad. But to start, WearForce's proposed
14 construction is supported by the intrinsic evidence, most notably the claim language itself.
15 For example, within claim 25, the locking device is described as both rotatably supported
16 in the shroud and as something that engages the boss to retain the shroud in position
17 relative to the wear edge. (ECF No. 1-1 at 17.) Similarly, the locking device is described
18 in claim 35 as cooperating with the attachment mechanism to lock the shroud relative to
19 the wear edge. (*Id.* at 18.) Further, the locking device is described in the specification as
20 "adapted to be rotatably received in an aperture 55" (ECF No. 1-1 at 15) and is otherwise
21 described in the introduction as "adapted to engage the compressible member to retain
22 the shroud in position relative to the wear edge" (*id.* at 13).

23  Indeed, and as WearForce argues in reply (ECF No. 47 at 15), WearForce's
24 proposed construction aligns with the description of the locking device provided in the
25 specification of the '477 Patent. The locking device works with the boss to lock the shroud
26 relative to the wear edge. (ECF No. 1-1 at 15.) Conversely, Talon's proposed construction
27 does not capture how the locking device cooperates with the boss to lock the shroud
28 relative to the wear edge. Talon's proposed construction merely specifies that the locking

13

device rotationally advances into a shroud. (ECF No. 46 at 29-30.) The Court accordingly rejects Talon's proposed construction as not supported by the pertinent claims and specification of the '477 Patent.

In addition, the Court also agrees with WearForce that the prosecution history does not support Talon's proposed construction that would cover a bolt or screw. (ECF No. 47 at 15-16.) Indeed, the prospective patentee specifically distinguished the bolt disclosed in the Maher prior art reference in arguing that the invention eventually reflected in the '477 Patent was patentable. (ECF No. 45-2 at 145-147.) Thus, the patentee cannot have been attempting to claim a bolt. And Talon's proposed construction would include a bolt because a bolt can rotationally advance into a shroud assuming there is some sort of apature or hole in the shroud. Thus, the prosecution history does not support Talon's proposed construction either.

In sum, the Court adopts WearForce's proposed construction as to this term. 'Locking device' means 'a lock including a locking member, rotatably supported in the shroud, that co-operates with the boss to lock the shroud relative to the wear edge.'

D.   **"compressible member" (claims 25, 27-29)**

| **WearForce's Proposed Construction** | **Talon's Proposed Construction** |
|---|---|
| "a component that is compressed by the locking device when the locking device is in the locked position" | "a component that elastically deforms when pressure is applied by the helix of the locking device" |

The key dispute as to this term is whether the compressible member must elastically deform, as Talon argues. WearForce argues, "the concept of elastic deformation does not appear anywhere in the patent specification or the prosecution history and unnecessarily complicates the plain language of the claims." (ECF No. 45 at 31.) Thus, WearForce argues, it makes "zero sense" to import this limitation into the claim language. (Id.) And WearForce further argues that the Court should not consider Talon's expert declaration because the intrinsic evidence is unambiguous so it is accordingly

improper to consider extrinstic evidence such as the declaration at this stage. (*Id.* at 31-32.)

Talon counters that the specification shows that the 'compressible member' changes shape from a 'compressed' to an 'uncompressed' shape so it must elastically deform. (ECF No. 46 at 32-34.) Talon further argues that Mr. deVries's unrebutted expert testimony supports its proposed construction. (*Id.* at 34-35.) WearForce replies in pertinent part that Talon's argument illustrates why the Federal Circuit has warned against the use of extrinsic evidence—such as expert testimony—in claim construction. (ECF No. 47 at 17-18.) Undue reliance on extrinsic evidence creates a risk that the Court will change the meaning of claims "in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." (*Id.* at 18 (quoting *Phillips*, 415 F.3d at 1318-19).) Overall, the Court agrees with WearForce as to this term.

"[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312. But the ordinary and customary meaning of compressible is not 'elastically deforms.' It is simpler, and more in line with WearForce's proposed construction. Moreover, the specification of the '477 Patent at least twice describes the 'compressible member' as something that is 'caused to compress.' (ECF No. 1-1 at 14 ("the compressible member is caused to compress"), 15 ("causes the compressible material 75 to compress").) Further, the specification of the '477 Patent describes the 'compressible member' as "compressed (or approaching this condition)" when the locking device is in a locked position. (*Id.* at 15.) Thus, the specification of the '477 Patent also supports WearForce's proposed construction.

In contrast, but as WearForce also argues (ECF No. 47 at 16), the concept of elastic deformation does not appear anywhere in the '477 Patent. Thus, Talon's proposed construction lacks support from the '477 Patent itself. Moreover, Talon—and Talon's counsel at the Hearing—tried to draw a distinction between elastic and plastic deformation, arguing that the compressible member is subject to elastic, but not plastic, deformation.

15

However, the ordinary and customary meaning of 'compressible' would encompass both plastic and elastic deformation. Indeed, 'compressible' is equivalent to 'compressed'—though the former describes possibility and the latter describes a state of compression. Thus, Talon's proposed construction does not align with with the ordinary and customary meaning of 'compressible,' while WearForce's proposed construction does.

Finally, the Court also agrees with WearForce that it does not need Mr. deVries' expert testimony to construe this term. (ECF No. 47 at 17-18.) Indeed, relying on his testimony to construe 'compressible member' more narrowly than provided by the customary meaning of the term "poses the risk that [his expert testimony] will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*, 415 F.3d at 1319 (citation omitted).

In sum, the Court adopts WearForce's proposed construction of this term and rejects Talon's. In the '477 Patent, 'compressible member' means 'a component that is compressed by the locking device when the locking device is in the locked position.'

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of this claim construction.

It is therefore ordered the claim terms in the '477 Patent discussed herein have the meaning the Court assigned them herein for purposes of this litigation.

DATED THIS 21st Day of June 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE